[No. 10401. Department One. March 4, 1913.]

## H. A. BURNHAM, *Respondent*, v. WASHINGTON MACHINERY DEPOT, *Appellant*.[1]

WORK AND LABOR—SERVICES — LIEN — CONTRACT OF EMPLOYMENT. The vendee under a conditional sales contract, which required him to take care of the property while in his possession, is not entitled to a lien for services in taking care of the property, after its abandonment by a receiver, where he still claimed under the conditional sales contract, and refused to allow the vendor to take possession; and a letter from the vendor notifying him that the receiver's watchman had been let out and "trusting" that he would take some supervision over the property pending adjustment of the matter, cannot be construed as a contract employing him to care for the property.

[1]Reported in 130 Pac. 337.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered January 3, 1912, upon
findings in favor of the plaintiff, in an action to foreclose a
lien. Reversed.

*Huffer, Hayden & Hamilton* and *Frank C. Owings*, for
appellant.

*Thomas M. Vance, Harry L. Parr*, and *Troy & Sturde-
vant*, for respondent.

*Wilson R. Gay, Geo. Olson*, and *Milo A. Root, amici curiae.*

MOUNT, J.—This action was brought by the plaintiff to
foreclose a lien claim of $2,150 upon a certain lot of sawmill
machinery. The lien claim is based upon a *quantum meruit*
account for alleged services performed by the plaintiff at the
request of the defendant, between September 3, 1909, and
November 18, 1910, as watchman and caretaker of the ma-
chinery. Upon the trial of the case, a judgment and decree
of foreclosure in the sum of $1,320.40 was entered in favor
of the plaintiff. The defendant has appealed.

The substantial facts are that the mill machinery was
delivered by the defendant to the plaintiff in May, 1906, and
October, 1907, under two contracts of conditional sale. These
contracts provided that the title to the property should re-
main in the defendant until paid for by the plaintiff. The
plaintiff did not pay for the property but remained in pos-
session, using it until July 30, 1909. On that day involun-
tary proceedings in bankruptcy were instituted in the United
States district court for the Western District of Washing-
ton, against the plaintiff, by certain creditors. A receiver
was appointed, who took immediate possession of the prop-
erty and placed a watchman in charge. At that time the
receiver had no funds available to pay the watchman. The
defendant and other creditors advanced money to pay for a
watchman for one month. At the end of that month, namely,
August, 1909, the defendant refused to advance more money

to the receiver, who threatened to discharge the watchman.
Three days later, on September 3, 1909, the defendant wrote
to the plaintiff a letter as follows:

"Mr. H. A. Burnham, Rainier, Wash.

"Dear Sir: We note that the 'watchman, Mr. Lawrence,
has been let out, and we trust that you will keep some sort
of supervision over this property of ours until such time that
we can get matters straightened out between ourselves and
Mr. Hill. It is our intention to at once take steps in regard
to the matter contained in the affidavit given your attorney
by us, and we would like to have your attorney call on Mr.
F. A. Huffer at his office in the Bank of Commerce Bldg.,
this city, and confer with him in reference to that matter.
It would also be well to have you present at the same time
in order to verify any statements made in the affidavit, as
well as to give our attorney any further information that he
may need. Yours truly,

"Washington Machinery Depot,
"By C. O. Bosse, President."

The watchman was not discharged at that time, but was
continued by the receiver and subsequently by the trustee
in bankruptcy, and the custody of the property remained in
the possession of the United States district court through
its trustee, until July 14, 1910, when by order of that court
it was abandoned as "burdensome." The plaintiff was then in
possession of the property. On September 20, 1910, the de-
fendant notified the plaintiff that he, defendant, had sold
some of the trucks, but the plaintiff refused to deliver pos-
session to the purchaser. Soon after that time, the plaintiff
made demand upon the defendant for compensation, at the
rate of $150 per month, as caretaker, from September 3,
1909, to the date of the demand in September, 1910. The
defendant refused to pay this demand, for the reason stated
that plaintiff was interested in the property as a purchaser
and that there was no employment of the plaintiff by the de-
fendant. On November 18, 1910, the defendant was proceed-
ing to retake possession of the machinery under the terms of
the contract of conditional sale. On the next day this claim

of lien sued upon was filed in the office of the county auditor, and this action was at once begun to foreclose the lien claim and to restrain the removal of the property. A restraining order was issued in the case.

Several questions are presented upon the record, but it seems so clear that there was no contract of employment that we shall not consider any other question. The possession of the property was delivered to the plaintiff under conditional sale contracts. The title was reserved in the vendor. It was the duty of the plaintiff to take care of the property while it was in his possession. The contract so provides, for it says: "If plaintiff shall fail or neglect to take proper care of any of said property" the defendant may take possession, etc. When the possession of the property was taken from the plaintiff by the bankruptcy proceedings and when the defendant supposed the watchman for the receiver in bankruptcy was about to leave the property without protection, the latter wrote the letter above quoted, stating: "We note that the watchman, Mr. Lawrence, has been let out, and we trust that you will keep some sort of supervision over this property of ours until such time that we can get matters straightened out between ourselves and Mr. Hill." Mr. Hill was interested in the property by reason of the contract with the plaintiff. This was clearly not a contract of employment. The letter called upon the plaintiff to do only what he was bound to do under the conditional sale contract with the defendant. If the defendant at that time had resumed possession of the property, so that the plaintiff had been released entirely from the contract and had no further interest in the property, some claim might thereafter have been reasonably made for services as caretaker; but such is not the fact. The plaintiff claimed under this conditional sale contract until the last, and refused to permit the defendant to take possession of or to remove the property. In short, the plaintiff does not contend that the conditional sale contract had been rescinded, or that the property had been redelivered to the plaintiff. Un-

til that occurred, the defendant held the title, while the plaintiff held possession and was bound to care for the property while in his possession. There is nothing in the record or the letter which shows an employment of the plaintiff by the defendant for wages.

The judgment is reversed, and the cause ordered dismissed.

CROW, C. J., PARKER, CHADWICK, and GOSE, JJ., concur.